# Hancock, Appellant, *v.* McAvoy.

### [Marked to be reported.]

$$\overline{\begin{array}{cc} 151 & 439 \\ 199 & 641 \end{array}}$$

$$\overline{\begin{array}{cc} 151 & 439 \\ 32\ \text{SC} & 92 \end{array}}$$

*Deeds—Recitals—Reservation—Constructive notice.*

A recital in a deed excepting from the grant all lots which have been granted to any person for burial lots, is constructive notice to those claiming under said deed that the burial lots were excluded from the operation of the deed, although the deed of the burial lots was not recorded until after the deed containing the exception.

Argued March 24, 1892. Appeal, No. 142, Jan. T., 1892, by plaintiff, Geo. W. Hancock, from judgment of C. P. No. 2, Phila. Co., June T., 1889, on verdict for defendant, Thos. B. McAvoy. Before PAXSON, C. J., STERRETT, GREEN, McCOLLUM and MITCHELL, JJ.

Trespass to recover damages to eighty-two cemetery lots situate in what was formerly part of the Phila. Cemetery Co. now occupied by defendant.

The facts appear by the opinion of the Supreme Court.

On the trial, before PENNYPACKER, J., the deeds of Wood, Zieber and Lisle, quitclaim deeds, recited in the opinion of the Supreme Court, were admitted, under objection. [1–4]

The court also admitted under objection a decree of court authorizing a sale of part of the cemetery company to defendant. [5]

Also, under objection, deed of cemetery company to defendant. [6]

W. W. Tudor, secretary of the cemetery company, was asked by defendant's counsel: " Q. Is this the order sent by Mr. Hancock, dated Fourth-month, 1888, authorizing the burial in the Philadelphia cemetery? Objected to, objection overruled. A. It was directed to me, I refused to receive it because Hancock had no right to bury there. This is the order I got from him." [7]

A witness was also asked by defendant's counsel: " What was the value of the right of interment at the time of the sale to McAvoy? Objected to, objection overruled. A. I do not consider that they had any value. It was a pond of water no one would buy." [8]

The court charged in part as follows :

" You will observe that it [the exception in the deed] is not described as the reservation of any lots by the designation of the lots, but it is a use of general words of ' all lots heretofore granted ' by Tilford. . . . [The first question of fact which you have to determine is whether upon such inquiry as he could have made (and you will remember in this connection from the paper which has been presented, it appears that Salaignac knew of the reservation of the two hundred lots), whether by proper inquiry he could have learned of the conveyance of these interests in the two hundred lots. If he could have so learned, then, notwithstanding the fact that his deed was recorded earlier, he would be bound by that knowledge. If, on the contrary, such inquiry could not have resulted in that information, then he is not bound by it, and it would be your duty to find a verdict for the defendant.] [9] . . . .

" The plaintiff has testified further, that some clay has been taken from this ground, and also that there are some houses and sheds there. But upon cross-examination, he would not say that the clay had been taken from the lots which were covered by the deed in the conveyance to the plaintiff. Nor would he say that the houses and sheds were erected upon any of these lots. You will consider that if the clay was taken from the lots in question, as to whether or not that is an interference with his rights ; but my distinct recollection of his testimony is that he did not say that the clay was taken from any of these lots." [10]

Plaintiff's points were as follows :

1. Request for binding instructions. Refused. [11]

" 2. Defendant is bound by the recital in his deed, and by those in the deed of the grantor, and there was sufficient therein to put upon him notice of plaintiff's claim. *Answer :* I decline to so charge, having expressed to you what is the law upon that subject in my general charge : That it is notice of what is contained in the exception in the deed, and that exception puts him upon inquiry. If the inquiry would have resulted in giving the information as to the previous conveyance, then he is bound by it ; if it would not have resulted in such information, then he is not bound, and it will be your duty to find a verdict for the defendant." [12]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1–8) rulings on evidence, quoting offers and answers as above; (9–12) instructions, quoting them.

*Henry J. Hancock, John G. Johnson* with him, for appellant. —The questions involved in this case are: Had the defendant notice of plaintiff's title from deeds in evidence so that he was a trespasser, and did plaintiff prove any damage?

The court below left it to the jury to find whether defendant had notice of plaintiff's title. Defendant is bound by recitals contained in deeds of his grantor. Only that passes which the grantor had at the time to convey, no matter whether the deed for part previously conveyed is recorded or not: Griffin v. Henderson, 70 Pa. 275. A grantee in quitclaim deed is not bona fide purchaser as against grantee under previous unrecorded conveyance: Runyon v. Smith, 18 Fed. R. 579; Hastings v. Nissen, 31 Fed. R. 597; U. S. v. Sliney, 21 Fed. R. 894; Wallerton v. Snow, 15 Fed. R. 401; Dickerson v. Colgrove, 100 U. S. 578; Baker v. Humphrey, 101 U. S. 494; Price v. King, 44 Kan. 639; Rodgers v. Burchard, 34 Tex. 441; Stoffel v. Schroeder, 62 Mo. 147; Marshall v. Roberts, 18 Minn., 408; Smith v. Bank, 21 Ala. 125; Oliver v. Piatt, 3 How. 333, 410; Ridgeway v. Holliday, 59 Mo. 455; Hamilton v. Doolittle, 37 Ill. 482; Morse v. Godfrey, 3 Story's C. C. R. 365; Adams v. Cuddy, 13 Pick. 460.

The grantee must be held to have notice, for the quitclaim itself implies a doubtful title: Kerr v. Freeman, 33 Miss. 292; Brown v. Jackson, 3 Wheat. 449; Nash v. Bean, 74 Me. 340; May v. Le Claire, 11 Wallace, 217, 232; Villa v. Rodriguez, 12 Wallace, 323; Gest v. Packwood, 34 Fed. R. 368; Schradski v. Albright, 5 S. W. R. 807; Pastel v. Palmer, 32 N. W. R. 257; McAdow v. Black, 13 Pac. R. 377; Peters v. Cartier, 80 Mich. 125; O'Neal v. Seixas, 4 So. R. 745; Tram. Lumber Co. v. Hancock, 7 S. W. R. 724; Weisenberg v. Truman, 58 Cal. 63.

In the American Mort. Co. v. Hutchinson, 19 Or. 342, the court said: "The office of a quitclaim deed is well understood, and although it is as effective under modern legislation to convey all the estate which can be transferred by a deed of bar-

gain and sale, yet it shows upon its face that the grantee therein contracts for such title to the property as the grantor has." See also Steele & Son v. Sioux Valley Bank, 79 Iowa, 339.

As to promissory note omitted from mortgage: Dargin v. Beeker, 10 Iowa, 571; as to omitted mortgage: Hamilton v. Nutt, 34 Conn. 501; as to notice of assignment of mortgage contrary to covenant therein: Peto v. Hammond, 30 Beav. 495; as to judgment released, in breach of trust: Kirk's Ap., 87 Pa. 243; as to existence of deed in chain of purchaser's title: Logan v. Neill, 128 Pa. 457.

Inquiry is a duty where there is visible a state of things inconsistent with perfect right in him who proposes to sell: Meehan v. Williams, 48 Pa. 241; Hottenstein v. Lerch, 104 Pa. 462; Knouff v. Thompson, 16 Pa. 364; Leonard's Ap., 94 Pa. 168; Morgan's Ap., 126 Pa. 500; Ogden v. Porterfield, 34 Pa. 193; Sergeant v. Ingersoll, 7 Pa. 340; Aldrich v. Bailey, 71 Pa. 246. Even an inaccurate recital will affect with notice of the true facts: Hope v. Liddell, 21 Beav. 183; Howard v. Chase, 104 Mass. 249; Boggs v. Varner, 6 W. & S. 469; Bellas v. Lloyd, 2 Watts, 401; Kerr v. Kitchen, 17 Pa. 433. Notice of contents of any paper referred to in recital will be charged upon a purchaser: contents of will: Lessee of Burkhart v. Bucher, 2 Bin. 465; Becker v. Kehr, 49 Pa. 223; of any muniment of title: Cresson v. Miller, 2 Watts, 272; codicil of will: Lodge v. Simonton, 2 P. & W. 449; ancient deed: Garwood v. Dennis, 4 Binn. 314; James v. Letzler, 8 W. & S. 192; as to devise: McAteer v. McMullen, 2 Pa. 32; Cuyler v. Bradt, 2 Caine's Cas. 326; notice of ground rents reserved by deeds never recorded: Dean v. Connelly, 6 Pa. 239; Penrose v. Griffith, 4 Bin. 231; McKee v. Perchment, 69 Pa. 342; Sergeant v. Ingersoll, 15 Pa. 343; Develin in Deeds, sec. 1000; Parke v. Neeley, 90 Pa. 52; Dunham v. Dey, 15 Johns. 555; Brinkman v. Jones, 44 Wis. 498; Randall v. Silverthorn, 4 Pa. 173. As to unrecorded mortgage recited in deed: Steckel v. Desh, 12 W. N. 130.

*Silas W. Pettit, John R. Read* with him, for appellee.—Defendant's title was acquired under conveyance duly recorded long prior to record of that under which plaintiff claims. The act March 18, 1775, Purdon, 583, pl. 94, enacts that all

deeds not recorded within six months of their execution shall be fraudulent and void as against subsequent purchaser unless such deed be recorded before deed of subsequent purchaser. This act includes all instruments concerning land : 'Brotherton v. Livingston, 3 W. & S. 334, and applies to purchasers of equitable estates : Bellas v. McCarty, 10 Watts, 13. Record of subsequent conveyance reciting unrecorded conveyance is not notice to subsequent purchaser : Hetherington v. Clark, 30 Pa. 393.

The recital in Tilford's deed to Salaignac excepting from the grant the burial lots, cannot affect defendant's title ; because it is settled law in Pennsylvania that where grantee neglects to record his deed and grantor executes another to one who takes without notice of the first, a vendee of the second grantee is protected : Phillips v. Stroup, 1 Mona. 517 ; Good v. Bausman, 6 W. N. 93.

Nor is it law that a grantee under a quitclaim deed is not within protection of recording acts. It is a form of conveyance well known to common law : 4 Kent's Com. 494 ; 2 Bl. Com. *324.

In nearly all the cases cited by appellant there was evidence of express notice of the outstanding right set up against the grantee. Such was the fact in the only Pennsylvania case cited, U. S. v. Sliney, supra, where there was direct notice of the title of the U. S. The whole doctrine is founded on Oliver v. Piatt, 3 How. 333–410, in which the court found that the grantee had actual notice of the facts creating a trust in' his grantor.

A quitclaim deed is as effectual as deed of bargain and sale, and a grantee therein is as much entitled to protection of recording acts and to preference over one claiming by deed prior in time but subsequent in record from same grantor : McConnel v. Reed, 38 Am. Dec. 124 ; Fox v. Hall, 74 Mo. 315 ; Graff v. Middleton, 43 Cal. 341 ; Fasha v. Blake, 38 Ill. 363 ; Brown v. Banner Co., 97 Ill. 214 ; Rowe v. Beckett, 30 Ind. 154 ; Mansfield v. Dyer, 131 Mass. 200 ; Chapman v. Sims, 53 Miss. 154. And in Hamilton v. Doolittle, 37 Ill. 482, which is misquoted and misapplied by appellants, the court held the grantee in a quitclaim deed entitled to the land described in it in preference to the grantee by prior conveyance of the same

land, which conveyance was however, definitely acknowledged, saying a quitclaim deed is as effectual to pass title as a deed of bargain and sale.

OPINION BY MR. JUSTICE STERRETT, October 3, 1892.

This action of trespass was brought by George W. Hancock v. Thomas B. McAvoy to recover damages alleged to have been done by the latter to certain cemetery lots claimed by plaintiff. Both parties claimed title in said lots under John W. Tilford, who, in 1848, by deed duly recorded, acquired title in fee to the twenty-two acre tract of land on part of which said lots and others were located.

To maintain the issue on his part, plaintiff gave in evidence deed, May 6, 1850, recorded September 17, 1850, from said Tilford to John M. Lisle, granting unto the said Lisle his heirs and assigns " the exclusive and entire right of interment and sepulture in all and every of those two hundred lots in the Philadelphia Cemetery, situated," etc., " to have and to hold," etc., " for the uses and purposes of sepulture only, and to and for no other use, intent and purpose whatsoever."

The above mentioned lots include those alleged to have been damaged by defendant.

For the purpose of tracing title to himself, the plaintiff gave in evidence deed, September 16, 1850, recorded November 13, 1858, from said Lisle to Francis Troubat, and from said Troubat, by sundry conveyances, etc., the last of which is October 10, 1887, recorded April 26, 1888, from Edwin L. Fisher to said plaintiff. He then introduced evidence for the purpose of showing that some of said cemetery lots were damaged by defendant.

For the purpose of tracing title from said Tilford (the common source of title) to himself, the defendant gave in evidence sundry deeds, etc., viz. :

1. Declaration of trust, as to the undivided fourth parts of said twenty-two acres of land, embracing, inter alia, said cemetery lots, May 11, 1848, recorded January, 1849, from said John W. Tilford to said John M. Lisle, George Wood and George B. Zieber.

2. Deed, January 23, 1851, from said Tilford to Leo T. Salaignac.

3. Deed, March 15, 1851, from said Wood to said Salaignac.

4. Deed, April 9, 1851, from said Zieber to said Salaignac.

5. Deed, April 30, 1851, from said Lisle to said Salaignac.

The four last mentioned deeds were all recorded August 23, 1855, and are the same that are mentioned in the first four specifications of error, respectively.

6. Deed, October 23, 1857, recorded December 26, 1857, from said Salaignac to Samuel Grant, who died in 1872.

7. Deed, February 23, 1886, recorded March 3, 1886, from William G. Grant and others, heirs at law of said Samuel Grant, deceased, to the Philadelphia Cemetery Company.

8. Record, Court Common Pleas No. 2 Philadelphia,—decree amending charter of Philadelphia Cemetery Company, etc.

9. Deed, February 24, 1886, recorded March 3, 1886, from said Cemetery Company to defendant Thomas B. McAvoy.

Tilford's deed to Salaignac, January 23, 1851, recorded August 23, 1855, for said twenty-two acres of land, including the land on which lots in controversy are located, contains the following express reservation: " Excepting out of this grant all lots which have heretofore been granted by the said John W. Tilford to any person or persons or bodies politic for burial lots." The warranty clause in the deed contains substantially the same exception. Lisle's deed to Salaignac, for his equitable interest under Tilford's declaration of trust, purporting to convey his " then right, title, interest, property, claim, demand," etc., in and to same land, contains a recital of said exception, of all lots theretofore granted by Tilford for purpose of sepulture. The same recital is also contained in the respective deeds of Wood and Zieber aforesaid. Lisle had theretofore conveyed the cemetery lots in controversy to Troubat in September, 1850; but his deed to Troubat was not recorded until November 13, 1858, more than seven years after the conveyances from Tilford and others to Salaignac were made, and more than three years after said last mentioned conveyances were recorded.

It thus appears, on the face of the four deeds by which Salaignac acquired title, that all lots which had theretofore been granted by Tilford, in whom the legal title was, for purposes of sepulture, were expressly excepted from the operation of those deeds. They were not intended to be conveyed,

nor were they, in fact, conveyed to Salaignac. He acquired no title to them; and, so far as they are concerned, he had no title thereto which he could convey to his vendee.

The paper, dated April 26, 1851, executed by Salaignac, shows it was well understood by him that he acquired no title to the lots now in controversy. After reciting that Lisle had executed and delivered to him " a deed conveying his interest in the land now occupied as the Philadelphia Cemetery Company," he says : " It is hereby agreed and acknowledged that the said deed is and shall in nowise affect or impair the right of said Lisle to two hundred burial lots in the said cemetery, particularly described in a certain deed of John W. Tilford to said Lisle, dated the sixth day of May, A. D. 1850, recorded September 17, 1850, but that the right of the said Lisle to the said lots shall remain in like manner as though the said deed to the undersigned had not been executed and delivered."

This paper was not recorded, nor does it appear that any of the parties, claiming through or under Salaignac, knew of its existence; but that is of no consequence. It shows what Salaignac's own title papers and the record of Tilford's deed to Lisle show, and that he then knew he was acquiring no title to the lots in controversy, part of the lots theretofore conveyed by said Tilford for the exclusive purpose of sepulture. Tilford's deed to Lisle, as we have seen, has been on record since September 17, 1850. Salaignac and everybody about to take title under or through him, down to and including the defendant himself, had record notice that those lots, at least, had been conveyed by Tilford as and for burial lots ; and, on the face of the deeds by which Salaignac acquired title to other portions of the land, they had the same kind of notice, that those lots and all others theretofore granted by Tilford for same purpose, were by the very terms of the deeds to him excluded from their operation.

We fail to see that there was any question of fact to be sub mitted to the jury, in relation to notice or knowledge that said lots were not embraced in the deeds to Salaignac. The jury should have been instructed that Salaignac and all persons claiming through or under him had at least constructive notice that the cemetery lots, in question, were excluded from the operation of the deeds of Tilford and others to him.

The ninth and twelfth specifications are therefore sustained. The first to sixth, inclusive, are not sustained. There could be no harm done by admitting the deeds in evidence. The court could not determine, in advance, that they were immaterial or irrelevant.

The testimony referred to in the seventh specification should have been excluded. It was irrelevant.

There was no error in refusing to charge as complained of in the eleventh specification. Whether the lots in question were injured by any act of the defendant, and, if so, to what extent, were questions for the jury.

The remaining specifications are not sustained.

Judgment reversed and a venire facias de novo awarded.