SAMUEL CALDWELL v. JOSEPH MOORE and Another, Executors of ROBERT MOORE, deceased.

A lessor, the owner of land, the taxes upon which are assessed against his lessees, is liable to his vendee of that land, who pays those taxes under levy, for the amount so paid in the absence of any contract between the lessor and lessees, by which the latter were bound to pay them.

ERROR to the Common Pleas of Huntingdon.

*May 24.* This was an appeal from the judgment of a justice of the peace, before whom Samuel Caldwell was plaintiff and the executors of Robert Moore were defendants.

The case as it appeared in evidence was as follows: Before the year 1840, Robert Moore was the owner of a tract of land in Franklin township, Huntingdon county, with a forge on it, and in that year he leased the land and forge to Hileman & Haman, who went into possession, and continued there as the tenants of Moore, until the beginning of the year 1842. In the year 1841, while Hileman & Haman were in possession of the premises, they were assessed, in the name of Hileman & Haman, with the state, county, road, poor, and school taxes, for the year 1841. Some time in the year 1841, Hileman & Haman became insolvent, and never paid the above taxes assessed and due on the premises for the year 1841. About the end of the year 1841, Robert Moore sold the land and forge to Samuel Caldwell, by deed, dated April 1, 1842. Caldwell went into possession of the premises, on the first of April, 1842, and soon after the collector of taxes for Frank-

lin township levied with his warrant, on the coal of Samuel Caldwell, on the premises, for the collection of the state, school, county, poor, and road tax, assessed on the premises in 1841, in the name of Hileman & Haman, and which they left unpaid at the time they left the premises. Samuel Caldwell, to prevent the sale of his property by the collector, paid the above taxes for the year 1841 to the collector, and brought this action against the executors of Robert Moore, who was the owner of the land at the time the taxes were assessed, to recover back the amount of money and interest paid by him, Samuel Caldwell.

The defendants requested the court to instruct the jury as follows:

1. The taxes, for the payment of which plaintiff claims to recover, being assessed in the names of Hileman & Haman, without any reference to Robert Moore as owner, the collector could not seize the goods of Robert Moore, or by any means compel him to pay the taxes; and Caldwell, whether the payment by him was voluntary or compulsory, cannot recover.

2. If the goods of Robert Moore, as owner of the real estate, would not be liable to distress for the taxes, then Samuel Caldwell's goods would not; and if he paid the taxes it was a voluntary payment, and he cannot recover for the taxes so paid by him.

3. The taxes not being assessed in the name of Robert Moore, nor during his occupancy, there was no personal liability on him to pay them, and if Samuel Caldwell paid them, he did it voluntarily, and cannot recover them in this action, his remedy, if he has any, being against Hileman & Haman.

4. The plaintiff claiming the land on which taxes were assessed, as owner thereof, cannot recover from a former owner taxes which were assessed in the name of the tenants of the former owner, in the absence of any agreement.

The court below (WILSON, President) gave the instructions prayed for.

The verdict was against the plaintiff, so far as he sought to recover the amount of the taxes paid by him; but was in his favour for the balance of an account due to him by Robert Moore in his lifetime.

The plaintiff below sued out a writ of error, and assigned for error these instructions, and also that portion of the charge in which the court said that the "taxes were a charge against Hileman & Haman, and not against the land nor against Moore; and although the payment by Samuel Caldwell may have been com-

pulsory and not voluntary, it was a payment for Hileman & Haman, the persons charged with the taxes, and against them he would have his claim, if against any one, for reimbursement."

*Fisher*, for plaintiff in error.—Moore was liable for these taxes, and Caldwell having been compelled to pay them, as the occupant of the land, has a right to recover from Moore: Act 6 April, 1802, § viii.; Public Roads and Highways Act, Purdon of 1830, 795; Act 3 April, 1804, § vi. Selling unseated lands, Purdon of 1847, p. 1018; Act 15 April, 1834, § xlvi. County rates and levies, Purdon of 1847, p. 1091; Shaw v. Quinn, 12 S. & R. 299; Henry v. Horstick, 9 Watts, 412.

*Orbison*, contrà.—Caldwell's payment of these taxes was voluntary, as he was not bound to pay them, because they were not assessed during his occupancy: Act 15 April, 1834, § xlvi.; Parsons v. Allison, 5 Watts, 72–3; Pa. Law Journal, 361; Opinion of President Ewing in Scott v. Whitely, reviewing the authorities; M'Gregor v. Montgomery, 4 Barr, 240. The remedy is only against Hileman & Haman: 12 S. & R. 299.

The opinion of this court was delivered by

Rogers, J.—Henry v. Horstick, 9 W. 413, is an authority to the point that the payment of the taxes made by Caldwell cannot be deemed voluntary, and that as his goods were taken to pay a debt owing by another, he has a remedy to recover the money he was compelled to pay, from the original debtor. And so the court instructed the jury; but the difficulty is as to the person against whom the action lies. The jury were instructed that Hileman & Haman, the tenants of Moore when the taxes were assessed, were alone liable. That Moore, who was the owner of the property, in the absence of any contract to the contrary between lessor and lessees (which we cannot presume) was ultimately liable, cannot admit of doubt; for by the 6th section of the act of the 3d April, 1804, " every tenant who may or shall occupy or possess any lands or tenements, shall be liable to pay all the taxes which during such occupancy or possession may thereon become due and payable, and having so paid said taxes, or any part thereof, it shall be lawful for him, by action of debt or otherwise, to recover said taxes from his landlord, or at his election to defalcate the amount thereof in the payment of the rent due to such landlord, unless such defalcation or recovery should impair any contract or agreement between them previously made." Although the tenant may

be primarily liable at the election of the officer, yet the remedy is obviously cumulative only; for the collector may, if he chooses, proceed to collect the tax from the owner, who is personally liable for all assessments on seated lands, and this whether the tax be assessed in the name of the landlord or tenant. If the tax be assessed in the name of the owner, the tenant is liable by force of the act, and I can see no good reason why the same rule should not be applied, when it is imposed directly on the occupying tenant. It surely was not intended that because the tax was assessed in the name of the tenant, the owner should be exonerated altogether, nor could it have been in the contemplation of the legislature, that the owner, who it is confessed is ultimately liable, may not be compelled to pay in the present instance by action or otherwise. Why should Caldwell be compelled, in the first instance, to resort to Hileman & Haman, who are insolvent? It is in fact denying him all remedy whatever; and even if they were able to pay, it would introduce, for no useful purpose whatever, circuity of action, which the law abhors. For on a recovery even against the tenants, they, it must be conceded, may recover the amount paid from their landlord. There is no injustice in placing Caldwell in the position of Hileman & Haman, and then entitling him to recover directly from the owner of the land, who is personally liable for payment of the tax. The money was emphatically paid for the use of the owner, the tenant being liable merely by force of an act passed for the express purpose of facilitating the recovery of state and county taxes.

Judgment reversed, and a *venire de novo* awarded.